UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHERINE WRIGHT<br><br>Plaintiff,<br>v.<br><br>BLUELINX CORPORATION,<br><br>Defendants. | CASE NO. 2:25-cv-01645-LK<br><br>ORDER GRANTING MOTION TO REMAND |

This matter comes before the Court on Plaintiff Katherine Wright's Motion to Remand. Dkt. No. 11. For the reasons provided below, the Court grants the motion.

## I. BACKGROUND

Wright brought this suit in King County Superior Court as a putative class action, seeking damages under Washington's Equal Pay and Opportunities Act ("EPOA"), Wash. Rev. Code § 49.58.110. Dkt. No. 1–1 at 10–11. The EPOA requires employers "to disclose salary, wage, and benefits information in all job postings." *Branson v. Wash. Fine Wine & Spirits, LLC*, 574 P.3d 1031, 1035 (Wash. 2025) (en banc); Wash. Rev. Code § 49.58.110(1). Job applicants may bring a civil action against an employer for actual damages or statutory damages for violations of the

EPOA's disclosure requirements. *Branson*, 574 P.3d at 1035; Wash. Rev. Code § 49.58.110(5). "'[J]ob applicant' means a person who applies to a job posting, regardless of their subjective intent in doing so." *Branson*, 574 P.3d at 1036.

In October 2024, Wright applied for a "Branch Administrative Manager" position with BlueLinx Corporation ("Bluelinx"), a "wholesale distributor of building and industrial products" based in Georgia. Dkt. No. 1-1 at 7, 14; *see also* Dkt. No. 1 at 4.[1] According to Wright:

- "The posting for the job opening [she] applied to did not disclose the wage scale or salary range and a general description of all of the benefits and other compensation to be offered to the hired applicant." Dkt. No. 1-1 at 7.

- She "lost valuable time applying to a position for which the posting did not disclose" the required information. *Id.* at 8.

- She "remains unable to evaluate the pay and benefits for the position and compare it to other available positions in the marketplace, which negatively impacts [her] current and lifetime wages." *Id.*

- Her "ability to negotiate pay remains adversely affected." *Id.*

- She "has experienced economic and non-economic harm as a direct result of Defendant's discriminatory hiring practices [and] its violation of RCW 49.58.110[.]" *Id.*

Wright further asserts that Bluelinx "engaged in a common course of conduct of failing to disclose" wage and benefit information in its Washington job postings, and seeks to certify a class of others who applied for jobs with Bluelinx in Washington and were not provided with wage and benefit information. *Id.* at 9–10.

---

[1] Although the complaint states that Wright "applied for a position with [Bluelinx] in Washington," Dkt. No. 1-1 at 7, the job description attached to the complaint states that Bluelinx is "seeking a Branch Admin Manager in the Denver area," *id.* at 14. Seemingly relatedly, the complaint contains one paragraph about Colorado enacting a pay transparency law that is "similar" to Washington's, but it never explains the relevance of that paragraph to the sole cause of action—violation of Section 49.58.110 of the Revised Code of Washington. *Id.* at 5, 10–11. However, the complaint also alleges—and Bluelinx admits—that Wright and others applied to job openings with Bluelinx "for positions located in Washington" between January 1, 2023 and July 25, 2025, and that Wright in particular applied for such a position on or about October 1, 2024. Dkt. No. 1-1 at 6–7; Dkt. No. 5 at 3–4. Accordingly, the Court assumes for the purposes of Wright's motion to remand that the job position was located in Washington, and either Wright attached the wrong job description to her complaint, or the job description erroneously described the position as located in Denver.

ORDER GRANTING MOTION TO REMAND - 2

Bluelinx filed a notice of removal to this Court. Dkt. No. 1. Wright then filed her motion to remand. Dkt. No. 11.

## II.   DISCUSSION

Wright argues that where, as here, "a plaintiff sues under RCW 49.58.110 but does not plead that they are a 'bona fide' applicant, engaged in pay negotiations, or was offered an interview, the plaintiff lacks Article III standing, and remand is required." Dkt. No. 11 at 1. She argues in the alternative that the case should be remanded because Bluelinx cannot establish the amount in controversy required under 28 U.S.C. § 1332(a). *Id.* at 2.

In a brief that repeatedly violates Section V.C. of this Court's Standing Order for all Civil Cases, Dkt. No. 9-1 at 4, Bluelinx responds that Wright has alleged Article III injury by asserting that "she suffered economic harm, lost valuable time, and [that] her ability to negotiate pay was adversely affected due to [Bluelinx's] violations." Dkt. No. 15 at 1. Bluelinx also argues that Wright's "attorney's fees alone will exceed the jurisdictional minimum." *Id.*

### A.   Legal Standard

Removal of a civil action to federal district court is proper when the federal court would have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* Doubts as to removability are thus resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

As the party invoking federal jurisdiction, Bluelinx bears the burden of establishing the existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

ORDER GRANTING MOTION TO REMAND - 3

561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). For an injury in fact to exist, a statutory violation must have "caused [a plaintiff] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo v. Robins*, 578 U.S. at 338). "[A] plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* (citation modified).

B.   **Wright Lacks Article III Standing**

Although statutory violations can create an injury in fact when "the statutory provisions at issue were established to protect . . . concrete interests (as opposed to purely procedural rights)," none of Wright's allegations constitute such an injury because "the specific procedural violations alleged" do not "actually harm, or present a material risk of harm to," any concrete interest. *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021). That is because Wright's allegations regarding the harm caused by Bluelinx's disclosure violations either merely parrot the language of the statute without support, or are purely speculative. There is no indication that she possessed the skills or experience necessary for the position, nor is there any indication that she had any intention of actually taking the job or negotiating the salary. *See generally* Dkt. No 1–1. And Wright's allegations that she "experienced economic and non-economic harm" and that her "ability to negotiate pay remains adversely affected," Dkt. No. 1–1 at 8, assume without support

ORDER GRANTING MOTION TO REMAND - 4

that she would have been selected for an interview and ultimately hired for this or equivalent jobs. More is required to show injury in fact: as the Supreme Court has "repeatedly reiterated," threatened injury "must be *certainly impending* to constitute injury in fact, and . . . allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (citation modified).

Bluelinx argues that the Court should "re-examine Article III analysis," Dkt. No. 15 at 2, because previous decisions by this Court finding lack of standing in EPOA cases predate *Branson*—in which the Washington Supreme Court held that the Washington legislature "did not intend to make it more difficult for job applicants to recover for violations of the EPOA" and instead intended that job applicants be able to recover "regardless of an applicant's ability to show actual damages," 574 P.3d at 1035. But *Branson* has no impact on what it takes to establish Article III standing, as this Court has held repeatedly post-*Branson*. *See, e.g., Kent v. Tech Mahindra (Americas) Inc.*, No. C24-1168BJR, 2025 WL 2810715, at *4, (W.D. Wash. Oct. 3, 2025) (affirming, post-*Branson*, that an EPOA plaintiff must show an injury-in-fact to establish federal standing regardless of the requirements to state a claim under state law); *Hill v. Les Schwab Tire Ctrs. of Wash. LLC*, No. C24-0425BJR, 2025 WL 3062646, *5 (W.D. Wash. Oct. 31, 2025) (granting a motion to remand an EPOA matter for lack of Article III standing post-*Branson* where the defendant could not establish that plaintiff had suffered an injury-in-fact and had Article III standing); *Eggleston v. Bruckner Truck Sales Inc.*, No. C25-1467JLR, 2025 WL 3153503, at *3 (W.D. Wash. Nov. 12, 2025) (same).

Bluelinx attempts to draw a false equivalency between state and federal standing by asserting that "[i]t is contradictory to conclude that Plaintiff lacks Article III standing because she has failed to allege any injury but conclude she still can proceed in state court despite having suffered no injury." Dkt. No. 15 at 3. But "a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action

ORDER GRANTING MOTION TO REMAND - 5

in federal court, if [s]he cannot demonstrate the requisite injury." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001). Thus, a "procedural violation of an informational entitlement does not by itself suffice to keep a claim in federal court"; the plaintiff must also allege "at least that the information had some relevance to *her*," and Wright has not done so here in a non-conclusory, non-speculative manner. *Magadia*, 999 F.3d at 679–80 (quoting *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 493 (6th Cir. 2019)); *see also id.* at 679 ("[N]ot every minor inaccuracy reported in violation of a statute will cause real harm or present any material risk of real harm." (citation modified)).

As for Bluelinx's arguments regarding futility, Dkt. No. 15 at 5, 12–13, "the literal words of § 1447(c)" give "no discretion to dismiss rather than remand an action" over which a district court lacks original jurisdiction. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (quoting *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)).[2] As the Ninth Circuit has observed, "whether the futility exception remains good law is an open question given *International Primate*[.]" *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189 (9th Cir. 2022). It also runs counter to the long-established principle that "[w]ithout jurisdiction the court cannot proceed at all in any cause" for a court without jurisdiction to effectively decide the merits of a case. *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514 (1868). Regardless, the futility exception is

---

[2] *See also Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 636–37 (11th Cir. 2015) ("The Supreme Court has noted that the literal words of § 1447(c) give district courts no discretion to dismiss rather than remand an action when subject-matter jurisdiction is lacking. . . . Whether the matter is justiciable under state law is a matter for the state court to decide.") (citation modified); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("If . . . the case did not originate in federal court but was removed there by the defendants, the federal court *must* remand the case to the state court from whence it came." (emphasis in original)); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557–58 (10th Cir. 2000) ("The plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction."); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("In light of the express language of § 1447(c) and the Supreme Court's reasoning in *International Primate,* we hold that when a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility.").

"narrow" and applies only where there is "absolute certainty" that a state court would dismiss the action following remand. *Sauk-Suiattle Indian Tribe*, 56 F.4th at 1189–90. Bluelinx has not made that showing here. Whether Wright has standing under state law is a matter for the state court to decide; dismissal for lack of standing under state law is not "foreordained" based on her allegations. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016); *see also Hill v. Hydromax USA LLC*, No. 2:25-CV-1621-JNW, 2025 WL 3677481, at *4 (W.D. Wash. Dec. 18, 2025) (declining to dismiss an EPOA case under the futility doctrine because "Washington courts are not bound by Article III, and under *Branson*, Hill need not prove bona fide applicant status to seek remedies under the EPOA" (citation omitted)).

## C.    Bluelinx has Failed to Establish the Amount in Controversy

Bluelinx argues that Wright's damages are $5,000, and "[h]er attorney's fees for 'just' her case will easily exceed $70,000." Dkt. No. 15 at 15. It is farcical for Bluelinx to attempt to make up a $70,000 jurisdictional shortfall through attorney's fees alone at this nascent stage of the case. *See Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 736 n.12 (4th Cir. 2009) (affirming order remanding case and noting that at the nascent stage of litigation, "an estimate of attorneys' fees is pure speculation, and thus, on this record, cannot be used to augment the amount-in-controversy calculation"); *Lopez v. Gen. Motors, LLC*, No. CV 25-06549-MWF(MAA), 2025 WL 2629545, at *4 (C.D. Cal. Sept. 11, 2025) (noting that it would be "implausible" to assume that attorney's fees would surmount $50,000 at "this early stage of the action"). "[D]istrict courts are well equipped . . . to determine when a fee estimate is too speculative because of the likelihood of a prompt settlement" or otherwise. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). Bluelinx assumes based only on its own *ipse dixit* that this case will be litigated to summary judgment and that this Court will award fees of at least 104 hours at a $725 hourly rate. Dkt. No. 15 at 15. Bluelinx's unsupported speculation fails to carry its burden to establish by a

ORDER GRANTING MOTION TO REMAND - 7

preponderance of the evidence that the amount in controversy is satisfied. *See Fritsch*, 899 F.3d at 795 (defendants are required to establish the amount in controversy "with summary-judgment-type evidence," and a court "may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof"); *Galvan v. Walt Disney Parks & Resorts U.S., Inc.*, No. CV 17-00323-AB (FFM), 2017 WL 1033968, at *5 (C.D. Cal. Mar. 17, 2017) ("The fact that it is possible this case may proceed past the early stages of litigation and through to trial, and that the Court might later award attorneys' fees in excess of $75,000, does not establish that those events are more likely than not to occur. This speculative estimate of future attorneys' fees does not satisfy Defendant's burden. Moreover, applying the Defendant's logic, *any* case where attorneys' fees may be awarded by statute would satisfy the amount in controversy, even if unsupported by any concrete evidence, merely because litigation is expensive and the fact a case was filed raises the possibility it may proceed to trial.").[3]

### III.  CONCLUSION

For the foregoing reasons, Wright's motion to remand is GRANTED. Dkt. No. 11. Because Bluelinx has failed to establish subject matter jurisdiction, the Court ORDERS that:

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

2. The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County, Washington;

---

[3] *See also Johnson v. Wells Fargo Home Mortg.*, Civ. No. 12–00144 GAF (SP), 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) (finding argument "that Plaintiff's counsel is billing at a rate of $400 per hour, meaning that 'were this case to go to trial Plaintiff's counsel would be required to expend approximately 125 hours in preparation,' for a total of $50,000 in attorney's fees," as "nothing more than speculation"); *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (finding defendant's contention that attorney fees were likely to total at least $20,000 too speculative where defendant simply asserted that it would take 80 hours at $200 an hour to bring the case to the summary judgment stage, without providing any factual information of how it arrived at this figure).

3. The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

4. The Clerk of the Court shall CLOSE this case.

Dated this 31st day of December, 2025.

*Lauren King*

Lauren King
United States District Judge

ORDER GRANTING MOTION TO REMAND - 9